**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **RONALD HAYWARD,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-15-3381 |
| **ERIC C. BROWN,
SHARRON LAND,
YVONNE ALEXANDER,
JOSPEHINE B. CLAY,
JOYCE RICHARDSON,
WILLIAM VALENTINE,
PAMELA JONES,** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Housing Authority of Prince George's County, Maryland ("Housing Authority") terminated Plaintiff Ronald Hayward's rental assistance under the Housing Choice Voucher Program (formerly known as Section 8) after the District Court for Prince George's County evicted him from a subsidized apartment for violating the terms of his lease. Compl. 3, 5, ECF No. 1.[1] Hayward filed a Complaint[2] pursuant to 42 U.S.C. § 1983 against Eric C. Brown, Executive Director of the Housing Authority, and six of his colleagues for terminating his voucher in violation of his Fourteenth Amendment due process rights as well as the Department of Housing and Urban Development ("HUD") regulations governing the program. *Id.* at 3.

---

[1] Page numbers for citations to the Complaint refer to the CM/ECF page numbers.
[2] Hayward filed his Complaint without counsel, but I later appointed pro bono counsel. ECF No. 17.

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 14, and the parties have fully briefed the motion, ECF Nos. 14-1, 18, 21, 22. A hearing is unnecessary in this case. Loc. R. 105.6. A genuine dispute of a material fact exists as to whether the Housing Authority terminated Hayward's voucher prior to an informal hearing held on April 23, 2014 and continued to June 27, 2014. But there is no genuine dispute that the hearing—if it occurred prior to the termination of benefits—comported with due process requirements. Accordingly, I will treat the Defendants' Motion as a motion for summary judgment and grant it in part and deny it in part. Additionally, I will deny without prejudice Hayward's request for preliminary injunctive relief. *See* Compl. 25.

## Background

Congress enacted the Housing Choice Voucher Program "[f]or the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a). Under this federally-funded and locally-administered program, individuals may obtain vouchers that cover the extent to which their rent and utility costs exceed a fixed percentage of their monthly income. *Id.* § 1437f(o)(2)(A)–(B). Local housing authorities pay landlords directly for rental costs and either pay utility companies directly or provide funds to the tenants to cover the utility bills, which the tenants are then responsible for paying. *See* 24 C.F.R. § 982.514. The Housing Authority of Prince George's County provides voucher recipients with monthly utility-assistance checks. *When Can I Expect to Receive My Utility Assistance Check Each Month*, Prince George's County, Md., http://www.princegeorgescountymd.gov/Faq.aspx?QID=250 (last visited Sept. 14, 2016).

Hayward qualified for a voucher in 2011 and used it to obtain a lease at the Ashton Heights Apartments in Suitland, Maryland. Compl. 5. Hayward's lease and Housing Assistance

Payment Contract made the Housing Authority responsible for paying the entire $1,090.00 monthly rental cost to the landlord directly and assigned Hayward responsibility for paying electricity, natural gas, water, and sewer bills. Apartment Lease Contract ¶¶ 6–7, Defs.' Mem. Ex. 1B., ECF No. 14-4; Housing Assistance Payments Contract ¶¶ 7–8, Defs.' Mem. Ex. 1B. To cover those utility costs, Hayward received monthly checks from the Housing Authority. *See* HAP Detail Register 2, Defs.' Mem. Ex. 1D, ECF No. 14-6.

On December 11, 2013, Ashton Heights filed a Complaint in the District Court for Prince George's County seeking possession of Hayward's unit and judgment for unpaid rent, utility payments, and late fees. Ashton Heights Compl., Pl.'s Supp. Ex. 3, ECF No. 6-3. Though the complaint sought both rental and utility costs, Defendants admit that Hayward had no obligation to pay rent due to his voucher. Defs.' Reply 2, ECF No. 22 ("[The Housing Authority] does not disagree that [Hayward's] share of the actual monthly rent due was zero for some of the time."); Informal Hr'g R. 13 (Ashton Heights Resident Statement showing payments of $1,090.00 on December 12, 2013 and credits of $988.00 and $102.00 totaling $1090.00 on January 5 and 6, 2014, respectively). The Defendants do maintain, however, that Hayward was responsible for but failed to make utility payments using his utility allowance. *Id.* Hayward does not dispute this fact. *See* Informal Hr'g R. 4, Defs.' Mem. Ex. 1A, ECF No. 14-3 ("[The Housing Authority] testified that [Hayward] received a utility allowance. [Hayward] testified that the check was his to keep. [Hayward's] account showed no record of payment or credit for utility charges.").[3] The total amount of utility costs at issue in Ashton Height's Complaint was $161.00 plus $62.55 in late fees, though it is unclear whether Ashton Heights assessed the late fees for the unpaid

---

[3] Page numbers for Informal Hearing Record refer to CM/ECF page numbers.

utilities or for the rent it claimed and for which Hayward was not apparently responsible. *See* Ashton Heights Compl.

The state court set a trial date for January 14, 2014. *Id.* On January 23, Judge Thomas J. Love entered a judgment in favor of Ashton Heights and ordered Hayward's eviction. Order, Pl.'s Supp. Ex. 4, ECF No. 6-5. On February 4, the Prince George's County Deputy Sheriff executed the eviction. Compl. 5.

Sometime prior to February 6, 2014—it is unclear when—the Housing Authority notified Hayward that it would terminate his rental assistance on February 28 based upon the state court eviction. *See* Defs.' Reply 8. On February 6, the Housing Authority received a request from Hayward for a hearing regarding the termination of his voucher. Hayward Ltr., Compl. Ex. 5, ECF No. 1-5. The Authority issued a second notice of termination on February 11, reiterating that rental assistance would cease on February 28. Notice of Termination, Compl. Ex. 6, ECF No. 1-6. It is unclear if Hayward's rental assistance in fact ceased on February 28, 2014. The Authority scheduled an informal hearing for April 23, 2014, which Hayward attended. Informal Hr'g R. 3–4, 8. Because Hayward indicated that he was trying to appeal the underlying eviction in state court, Hearing Officer Josephine B. Clay ordered the hearing continued, and a subsequent hearing occurred on June 24, 2014. *Id.* at 3.

Hearing Officer Clay held that Hayward committed a serious lease violation prohibited by 24 C.F.R. § 982.551(e) by "keeping the utility allowance checks and not paying the utilities." Informal Hr'g R. 3. She further found that the District Court for Prince George's County had issued a warrant of restitution evicting Hayward for the same underlying conduct, *id.*, and that HUD regulations require the termination of "program assistance for a family evicted from

4

housing assisted under the program for serious violation of the lease," *id.* (quoting 24 C.F.R. § 982.552(b)(2)).

More than one year later, Hayward initiated this suit without representation. His Complaint seeks injunctive relief from Director Brown in the form of reissuance of his voucher and damages from the remaining Defendants for the alleged violations of his federal rights. Compl. 25. Both sides characterize the injunctive relief sought as a request for a preliminary injunction. *See* Defs.' Mem. 8–10; Defs.' Reply 9; Pl.'s Surreply 5, ECF. No. 21. I appointed pro bono counsel after the Defendants filed their Motion. ECF No. 17. Hayward filed an Opposition shortly thereafter and before his attorney had an opportunity review all of the case filings. *See* Pl.'s Opp'n, ECF No. 18. Accordingly, the parties agreed to a consent motion, ECF No. 19, to provide Plaintiff's counsel additional time to investigate the matter and file a Surreply, which I approved, ECF No. 20. Hayward then filed his Surreply, ECF No. 21, followed by Defendants' Reply, ECF No. 22.

The Motion is now ripe for disposition.

## **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). When a defendant attaches documents to a motion to dismiss that are not "integral to the complaint" or where the documents' authenticity is disputed, the Court must treat the motion as one for summary judgment to consider the documents. *See* Fed. R. Civ. P. 12(d); *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013). When a court does so, "[a]ll parties must be

given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Notably, "the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion." *Ridgell v. Astrue*, DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Indeed, while the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). It is obvious that the Court may construe a motion that is styled as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," as is the case here, as a motion for summary judgment. *Ridgell*, 2012 WL 707008, at *7; *see also* Laughlin, 149 F.2d at 260–61. Because I consider documents attached to the parties' briefings, I will treat Defendants' motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material

facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

The purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). As a preliminary injunction is "an extraordinary remedy . . . [it] may only be rewarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Id.* at 20; *see also Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011).

Prior to 2009, the Fourth Circuit followed a "balance of hardship" approach to preliminary injunctions, considering all four *Winter* elements, but "allow[ing] each requirement to be conditionally redefined" in a "flexible interplay" depending on how the other requirements were met. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (citing *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977)). *Real Truth* invalidated this approach, however, and it "may no longer be applied" in the Fourth Circuit. *Id.* The plaintiff must therefore satisfy each requirement as articulated. *Id.*

**Discussion**

As an initial matter, actions brought under § 1983 must be directed at a "person" who acted "under color of" state law to deprive an individual of his or her federal rights. *Id.* Defendants profess uncertainty over whether Hayward asserts his claims against the Housing Authority employees in their individual or official capacities. Defs.' Mem. 2; Defs.' Reply 3. I do not share their confusion. The Complaint makes clear that the Defendants "are charged with . . . overseeing . . . a program designed to assist the economically deprived and the disable[d]" and that Hayward is suing them in their "official capacit[ies]" for their "consc[ious] decisions to violate the regulations and [his] [c]onsitutional [r]ights." Compl. 1. Especially for an individual unschooled in the esoterica of sovereign and qualified immunity, Hayward more than sufficiently states a valid § 1983 claim against the Housing Authority employees in their official capacities. Defendants raise no question as to their amenability to suit under this theory. *See* Defs.' Reply 3. I will therefore proceed to the merits.

Hayward's overarching claim is that the termination of his benefits failed to satisfy procedural due process standards and applicable HUD regulations. First, he argues that his due process rights were violated by the letter that notified him of the ensuing termination of his voucher and his subsequent difficulty securing a hearing. Compl. 7, 9–11. Second, he argues that the Housing Authority failed to comply with HUD regulations that require a pretermination hearing in instances where a housing authority terminates a voucher based upon a beneficiary's commission of a serious lease violation. Compl. 13; *see also* 24 C.F.R. §§ 982.552(b)(2), .555(a)(1)(iv), .555(a)(2). Finally, Hayward argues that the hearing itself violated his due process rights because he was unable to obtain hearing records he desired or enter all of the

evidence he wished to submit into the record, inferring from these facts that Hearing Officer Clay was biased towards him. Compl. 14–17.

Pretermination Hearing

The HUD regulations explicitly require that voucher recipients receive "an opportunity for an informal hearing *before* [a housing authority] terminates housing assistance payments for the family under an outstanding [Housing Assistance Payment] contract," 24 C.F.R. § 982.555(a)(2) (emphasis added), when the authority seeks to terminate assistance based upon a beneficiary's "action or failure to act," *id.* § 982.555(a)(1)(iv). The regulations identify the relevant actions and omissions by cross-reference to 24 C.F.R. § 982.552, which among other things requires termination of rental assistance when a beneficiary is "evicted from housing assisted under the program for serious violation of the lease." *Id.* § 982.552(b)(2). The Housing Authority terminated Hayward's voucher after finding that Hayward was evicted for a serious lease violation. Notice of Termination; Informal Hr'g R. 3. A pretermination hearing was therefore required. *See id.* § 982.555(a)(1)(iv), (a)(2).

Defendants do not directly address the regulations' pretermination-hearing requirement in their briefings. Rather, they discuss whether Hayward received a hearing in a "reasonably expeditious manner," as required under 24 C.F.R. § 982.555(d). *See* Defs.' Reply 7–8 (discussing *Lowery v. District of Columbia Housing Authority*, No. RMC-04-1868, 2006 WL 666840, at *11 (D.D.C. Mar. 14, 2006), in which the court held that a plaintiff had a cognizable claim under § 1983 based upon a housing authority's failure to provide her a "reasonably expeditious hearing" as required by the HUD regulations). While all required hearings concerning rental assistance must occur in a "reasonably expeditious manner," 24 C.F.R. § 982.555(d), the regulations further require a pretermination hearing for terminations

based on serious lease violations, *see* 24 C.F.R. § 982.555(a)(2). No matter how expeditiously a hearing occurs, a housing authority cannot meet its obligations under the regulations if it terminates rental assistance for a serious lease violation before holding the hearing.

On this point, *Lowery* is inapposite. That case dealt with the termination of rental assistance for a beneficiary who was no longer "living in subsidized housing and was not the beneficiary of an outstanding HAP contract" and whose voucher had in fact expired. *Lowery*, 2006 WL 666840, at *7. Accordingly, the court analyzed the timeliness of her hearing under the rubric of the regulations' general requirement for reasonably expeditious hearings. *Id.* at *9–10. But both the Plaintiff and Defendant "agree[d] that [the housing authority] could not have ceased subsidizing Ms. Lowery's rent until after a hearing on the proposal to terminate her from the Program, had she been living in Section housing at the time." *Id.* at *9.

Further still, Defendants seem to imply that the Housing Authority's obligation to provide rental assistance ceased immediately upon the state court's issuance of its eviction order. Defs.' Reply 6–7. In support of this argument, they cite 24 C.F.R. § 982.311(b), a subsection titled "Termination of payment" that provides:

> Housing assistance payments terminate when the lease is terminated by the owner in accordance with the lease. However, if the owner has commenced the process to evict the tenant, and if the [beneficiary] continues to reside in the unit, the [housing authority] must continue to make housing assistance payments to the owner in accordance with the [Housing Assistance Payment] contract until the owner has obtained a court judgement or other process allowing the owner to evict the tenant. The [housing authority] may continue such payments until the [beneficiary] moves from or is evicted from the unit.

*Id.* This argument treats the beneficiary's voucher and payment to a landlord pursuant to the voucher as coextensive. Where a regulation is clear, the Court enjoys no latitude to place its own gloss on the agency's rule. *See United States v. Deaton*, 332 F.3d 698, 709 (4th Cir. 2003) ("If the regulation is unambiguous . . . the regulation's plain language . . . controls."). Here, HUD is

10

clear.  Section 982.311(b) applies to termination of "housing assistance payments *to the owner*," *id.* (emphasis added), whereas § 982.555(a)(2) addresses termination of "housing assistance payments *for the family*," *id.* (emphasis added).  While the regulations give housing authorities the authority to terminate payment to landlords without a hearing based upon an eviction order, they do not confer similar latitude to summarily terminate a family's entitlement to a voucher. *Compare* 24 C.F.R. § 982.555(a)(2), *with* 24 C.F.R. 982.311(b).  This distinction makes sense, as public policy would not be served by requiring housing authorities to continue paying landlords after tenants had vacated their units either voluntarily or otherwise.

Were I to detect ambiguity in §§ 982.311(b) and 982.555(a)(2)'s dual charges, I still could not read § 982.311(b) to authorize summary terminations of rental assistance.  Rules of regulatory interpretation counsel against reading one regulation to render another superfluous. *Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234 (4th Cir. 2009) ("In interpreting . . . regulations, we have a duty, where possible, to 'give effect' to all operative portions of the enacted language . . . ." (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).  Treating § 982.311(b) as a green light for immediate termination of a voucher upon the issuance of an eviction judgment would render superfluous § 982.555(a)(2)'s pretermination-hearing requirement.  Since drawing a distinction between "housing assistance payments for the family," § 982.555(a)(2), and "housing assistance payments to the owner," § 982.331(b), gives meaning to both regulations, I must read the pretermination requirement to apply to termination of vouchers, but not to termination of payment to landlords.

Even if the HUD regulations did not explicitly require pretermination hearings, the Due Process Clause would. *Goldberg v. Kelly*, 397 U.S. 254 (1970), held that procedural due process guarantees apply to the termination of entitlement benefits where "the recipient's interest in

11

avoiding the loss outweighs the governmental interest in summary adjudication." *Id.* at 262. Under such circumstances, the Court held that "only a pre-termination evidentiary hearing provides the recipient with procedural due process." *Id.* at 264. The Fourth Circuit has applied *Goldberg* to delineate the procedural requirements for administration of the Housing Choice Voucher Program. *Clark v. Alexander*, 85 F.3d 146, 150–52 (4th Cir. 1996) (holding that reviewing courts satisfy due process requirements by according deference to a hearing officer's factfindings based on "substantial evidence"). Indeed, HUD codified the pretermination requirement in its regulations because its preexisting regulations failed to provide the procedural due process safeguards required by *Goldberg*. *See* Section 8 Housing Assistance Payments Program; Existing Housing, 49 Fed. Reg. 12,215, 12,229 (Mar. 29, 1984) (noting that HUD "incorporated into a formal regulation" sections from its pre-existing Administrative Practices Handbook in order to address "the lack of any enforceable regulations guaranteeing notice and hearing to persons whose section 8 subsidy is terminated" and thereby ensure "constitutionally adequate due process protections"). The Due Process Clause requires a hearing prior to termination of rental assistance.

Here, it is unclear whether a hearing occurred prior to the termination of Hayward's voucher. While the Housing Authority indicated in its February 11, 2014 notice of termination that Hayward's voucher would terminate on February 28, Informal Hr'g R. 6, the Defendants insist that Hayward presented "no evidence at all that he actually was terminated from the program on" that date, Defs.' Reply 6. But Hayward's reference to the February 28 termination deadline in his filings, at the very least, allows me to draw the inference that termination did in fact occur on that date, well before the initial April 23, 2014 hearing. This is especially true in view of Defendants' failure to offer any evidence that the Housing Authority terminated benefits

at some later date, despite attaching numerous agency records to their Motion. *See* Defs.' Mem. Exs. 1A–E. Indeed, Defendants' failure to offer any evidence in support of its contention that the Housing Authority terminated benefits after February 28, which, if true, is information readily available to them, but not to Hayward, raises the issue of whether summary judgment in Hayward's favor is appropriate under Fed. R. Civ. P. 56(f)(1). But as neither side has furnished any direct evidence of the termination date sufficient to put to rest the dispute as to this material fact, at this time I will simply deny Defendants' Motion and allow further discovery on this matter.

Other Due Process Considerations

As to Hayward's remaining due process claims—that he could not obtain the records he desired, that he could not enter all of the evidence that he wished to have included in the record, and that Hearing Officer Clay was biased—I find that his hearing satisfied the other *Goldberg* requirements. In addition to the pretermination-hearing requirement, *Goldberg* requires:

> (1) timely notice from the housing authority stating the basis for the proposed termination, (2) an opportunity by the tenant to confront and cross-examine each witness relied on by the housing authority, (3) the right of the tenant to be represented by counsel, (4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decisions are set forth, and (5) an impartial decision maker.

*Clark*, 85 F.3d at 150.

Hayward has offered no evidence that his hearing failed to satisfy any of these requirements. He received notice of the ensuing termination no later than three weeks before it was initially scheduled to occur. *See* Hayward Ltr. (request for hearing received by Housing Authority on February 6, 2014). Hayward does not assert anywhere in his Complaint or briefing that he was denied the opportunity to cross-examine witnesses. He does assert that four of the nine exhibits he sought to submit into evidence were not listed in the Informal Hearing Decision.

Compl. 15–16. While I cannot discern the reason why some exhibits were not enumerated in the Decision, the fact that some of his exhibits were entered into the record precludes the conclusion that Hearing Officer Clay prohibited Hayward from offering evidence in his defense. Hayward has never asserted that he either sought or was denied the opportunity to be represented by counsel at the hearing. Hayward infers from Hearing Officer Clay's failure to include all of his submitted exhibits in her Decision that she was biased against him, Compl. 15, 17, but he fails to offer any specific evidence of bias. Finally, while Hayward objects to his inability to secure recordings or transcripts of his hearings, Compl. 12–14, *Goldberg* recognized no due process right to either. So long as Hayward's hearing occurred prior to the termination of benefits, it appears to have comported with due process requirements. Accordingly, I will grant summary judgment to the Defendants as to Haywards' claims concerning the conduct of the hearing.

### Preliminary Injunction

Hayward requests injunctive relief against Director Brown in the form of reissuance of his voucher. Compl. 25. It is unclear whether he seeks this relief during the pendency of the action. *See id.* Both sides treated the request as one for preliminary injunctive relief in their briefing. *See* Defs.' Mem. 8–10; Defs.' Reply 9; Pl.'s Surreply 5. While both sides discussed the *Winter* elements, the briefing has not discussed them in sufficient depth for me to rule on the matter. Accordingly, I will treat Hayward's request for injunction relief as a request for a preliminary injunction and deny it without prejudice.

### **Conclusion**

After a careful review of the record, a genuine dispute of material fact exists as to whether the Housing Authority terminated Hayward's voucher prior to holding a hearing. I will therefore deny the Defendants' Motion as to Hayward's claim that he failed to receive a

pretermination hearing in violation of the Due Process Clause and HUD regulations. I will grant Defendant's Motion as to Hayward's claim that the hearing itself failed to comply with procedural due process requirements. Finally, I will deny without prejudice Hayward's request for preliminary injunctive relief. Defendants are ordered to file an Answer on or before October 4, 2016. Once an Answer is filed, the Court will schedule a Fed. R. Civ. P. 16 conference, at which time discovery will commence in order to establish whether or not Hayward's voucher was terminated prior to the hearing. If Plaintiff wishes to renew his request for preliminary injunctive relief, I will set a briefing schedule at the Rule 16 conference.

Dated: September 20, 2016                               /S/
                                                Paul W. Grimm
                                                United States District Judge

jlb